MONTGOMERY McCRACKEN
WALKER & RHOADS, LLP
437 Madison Avenue, 24th Floor
New York, NY 10022

Attorneys for Plaintiff
MSC MEDITERRANEAN SHIPPING COMPANY S.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MSC MEDITERRANEAN SHIPPING COMPANY S.A.,<br><br>Plaintiff,<br><br>-against-<br><br>SCHENKER, INC. and THE GREAT OCEAN LINE PTE. LTD.,<br><br>Defendants. | 26-cv-9015<br><br>**COMPLAINT** |

Plaintiff MSC Mediterranean Shipping Company S.A. ("MSC" or "Plaintiff"), by and through its undersigned attorneys, as and for its Complaint against Defendants Schenker, Inc. ("Schenker") and The Great Ocean Line PTE. Ltd. ("TGOL") (collectively, "Defendant"), alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1. This is a claim for breach of maritime contract and contractual indemnity arising out of the carriage of dangerous goods. Plaintiff seeks to recover the sum of $1,662,026, representing the USD value of a CAD 2,277,939.99 settlement paid by Plaintiff to a marine terminal for emergency hazmat remediation, storage, and disposal costs necessitated by Defendant's failure to properly pack and declare dangerous cargo, CAD 11,061.99 paid to Harbour Link in response to the same incident, and CAD 23,607.20 paid to surveyors responding to the same incident.

2. Plaintiff further seeks to recover outstanding container demurrage charges in the amount of $145,000.00, together with reasonable attorneys' fees and costs under the contract of carriage.

3. Finally, Plaintiff seeks a Declaratory Judgment under 28 U.S.C. § 2201 declaring that Defendants are contractually obligated to defend, indemnify, and hold MSC harmless from and against an active third-party cargo damage lawsuit pending in the Supreme Court of British Columbia, Canada.

**THE PARTIES**

4. Plaintiff MSC is a foreign corporation with a principal place of business in Geneva, Switzerland, and at all material times was a common carrier of goods by sea for hire.

5. Defendant Schenker is a domestic corporation organized and existing under the laws of the State of Virginia, with a principal place of business located in Virginia. At all material times, Schenker was a "Merchant" under the subject Sea Waybill and acted both on its own behalf and as the local managing, general, and operational agent in the United States for its affiliate, Defendant TGOL.

6. Defendant TGOL is a foreign company organized and existing under the laws of Singapore, with its principal place of business located at 2 Changi South Avenue 1, Singapore 486149. TGOL acts as a registered Non-Vessel-Operating Common Carrier ("NVOCC") and is a wholly-owned subsidiary or affiliate of DB Schenker. At all material times, TGOL was a "Merchant" and/or the Consignee under the subject Sea Waybill.

7. Defendants Schenker and TGOL operate as a single, unified business enterprise with respect to the ocean transport, destination management, logistics, and customs handling of the subject shipment, and are alter egos of one another with joint and several liability for the obligations of the "Merchant" under the Sea Waybill.

**JURISDICTION AND VENUE**

8. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

9. This Court has personal jurisdiction over the Defendants pursuant to the forum selection clause in Clause 10.3 of the Plaintiff's Sea Waybill terms and conditions, to which Defendants consented by participating in the transaction as Consignees, joint venture partners, and/or "Merchants."

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 and Clause 10.3 of the Sea Waybill, which provides that for carriage to or from the United States, suit shall be filed exclusively in this District.

**FACTUAL ALLEGATIONS**

11. On or about January 2, 2025, MSC received two shipping containers numbered TEMU4064950 and CAIU8135175 said to contain 164 drums of Dimethyl Sulfide (UN No. 1164, Class 3, PG II) for carriage from Dalian, China, to Chicago, Illinois, via Vancouver, British Columbia (the "Dangerous Goods").

12. The shipment was governed by MSC Sea Waybill No. MEDUEG760063 (the "Sea Waybill").

13. The Sea Waybill identifies Schenker China Ltd. Dalian Branch as the Shipper and lists the Consignee as "Schenker, Inc. (as agent of The Great Ocean Line)."

14. Under Clause 1 of the Sea Waybill, the "Merchant" includes the Shipper, Consignee, Holder of the Sea Waybill, Receiver of the Goods, and any Person owning or entitled to possession of the Goods or the Sea Waybill. Pursuant to Clause 16.3 of the Sea Waybill, all such Persons are jointly and severally liable for the performance of the Merchant's obligations.

15. On or about February 28, 2025, during discharge at GCT Deltaport located in the Port of Vancouver, terminal personnel detected a strong chemical odor emanating from containers TEMU4064950 and CAIU8135175.

16. Upon information and belief, investigation revealed that the inner plastic receptacles had failed, leading to the leakage of Dimethyl Sulfide vapors and liquid, creating an immediate hazard to the vessel, terminal personnel, and the environment.

17. Pursuant to terminal safety protocols, the Dangerous Goods cargo was subjected to an extensive remediation process involving 24-hour monitoring, overpacking into salvage drums, transloading into refrigerated containers to mitigate volatility, and ultimately, total destruction at a specialized facility in October 2025.

18. The terminal operator (GCT Canada Limited Partnership) asserted a claim against MSC for the hazmat response and storage costs. MSC, as the carrier, was compelled to pay the sum of CAD 2,277,939.99 in April 2026 to settle said claims and mitigate further loss.

19. MSC also incurred expenses to Harbour Link and surveying costs in connection with the same incident.

20. As a direct and proximate result of the leakage, emergency safety remediation, and delayed disposal of the Dangerous Goods, containers TEMU4064950 and CAIU8135175 were detained and remained on the terminal and in specialized storage for an extended period, accruing substantial container demurrage and detention charges.

21. Pursuant to MSC's applicable tariff, which is contractually incorporated into the Sea Waybill, outstanding demurrage and detention charges in connection with the subject containers total USD 145,000.00. MSC has demanded payment of these demurrage charges, but Defendants have failed and refused to pay.

22. In March 2026, a civil claim was commenced in the Supreme Court of British Columbia, Canada, against MSC by Sigma-Aldrich Co. LLC and Sigma-Aldrich, Inc. d/b/a Millipore-Sigma (the "BC Action"). The plaintiffs in the BC Action seek damages arising from the loss of the Dangerous Goods cargo, as well as the costs of disposing of same, plus interests and costs.

23. MSC has demanded that Defendants assume the defense of the BC Action and contractually indemnify MSC against any liability arising therefrom. Defendants have failed and refused to do so.

24. An actual, justiciable, and present controversy exists between MSC and Defendants regarding Defendants' duty to defend and contractually indemnify MSC from and against the BC Action.

**FIRST CAUSE OF ACTION (Failure to Warn)**

25. MSC repeats and realleges each prior paragraph as if set forth fully herein.

26. Defendants, as the NVOCC, Consignees, and Merchants possessed a superior knowledge of the nature, properties, and qualities of the Dangerous Goods cargo and failed to notify MSC, vessel personnel, or anyone else of the Dangerous Goods' true qualities or of the defects in their inner packaging, of which Defendants were or should have been aware.

27. Neither MSC nor its agents were careless, negligent or reckless, nor was MSC at any time aware of the true qualities of Defendants' Dangerous Goods cargo.

28. All of MSC's damages, losses, and settlement expenses as aforesaid are directly attributable to and caused by the liability-producing conduct of Defendants and/or their agents, without any fault of MSC or its agents contributing thereto. Consequently, Defendants are liable to MSC for all damages and losses incurred.

**SECOND CAUSE OF ACTION (COGSA)**

29. MSC repeats and realleges each prior paragraph as if set forth fully herein.

30. The shipment of the Dangerous Goods cargoes was contractually subject to the Carriage of Goods by Sea Act, Historical Note to 46 U.S.C. § 30701 ("COGSA"), via the Clause Paramount in the Sea Waybill.

31. The Dangerous Goods cargoes constituted goods of a flammable, volatile, and dangerous nature.

32. MSC had no actual or constructive knowledge of the defects in the inner packaging of the Dangerous Goods cargoes or the specific acute risks they posed.

33. Defendants, as Merchants under the Sea Waybill, failed to ensure that MSC was provided with accurate information, warnings, and safe packing regarding the Dangerous Goods cargoes, in violation of COGSA §§ 1304(3), 1303(5), and 1304(6)

34. Pursuant to the contractually incorporated COGSA terms, Defendants are strictly and contractually liable to MSC for any and all damages, losses, and expenses directly or indirectly arising out of or resulting from the shipment of such Dangerous Goods cargoes.

**THIRD CAUSE OF ACTION (Breach of Contract)**

35. MSC repeats and realleges each prior paragraph as if set forth fully herein.

36. Pursuant to Clause 11.4 of the terms and conditions of the Sea Waybill, Defendants were required to indemnify MSC against any loss, damage, liability or expense whatsoever and howsoever arising caused by the manner in which the Dangerous Goods cargo was packed, stowed, stuffed or secured in the containers, or the unsuitability of the Dangerous Goods cargo for carriage in the containers supplied, or any unsuitability or defective condition of the containers.

37. Pursuant to Clause 13 of the terms and conditions of the Sea Waybill, Defendants were required to indemnify MSC against any additional expenses incurred to take any measures necessary to safely carry the Dangerous Goods cargo.

38. Pursuant to Clause 14.4 of the terms and conditions of the Sea Waybill, Defendants warranted that any hazardous or potentially dangerous characteristics of the Dangerous Goods cargo were fully disclosed by or on behalf of the Merchant and that the Dangerous Goods cargo would not cause loss, damage, or expense to MSC, or to any other cargo, containers, vessel or person during carriage.

39. Pursuant to Clause 14.6 of the terms and conditions of the Sea Waybill, Defendants were required to indemnify MSC for any fines, expenses, or losses incurred (including reasonable attorneys' fees, expenses, and costs) by reason of any illegal, incorrect, or insufficient declaration, labeling, marking, numbering or addressing of the Dangerous Goods cargo.

40. Pursuant to Clause 15.1 of the terms and conditions of the Sea Waybill, Defendants were required to fully inform MSC in writing of the precise and accurate details of the Dangerous Goods cargo, and special precautions or handling required for the Dangerous Goods cargo, including distinct marks on the outside of the containers as well as on the outside of the packaging inside the containers so as to indicate the nature thereof, with such marking being in compliance with the requirements of any applicable regulations, including regulations contained in any relevant international treaty or convention such as the Safety of Life At Sea Convention, and the International Maritime Dangerous Goods Code ("IMDG Code").

41. Pursuant to Clause 15.2 of the terms and conditions of the Sea Waybill, Defendants are fully liable for and shall indemnify, hold harmless and defend MSC, its servants, agents and sub-contractors and any third-party for all loss, damage, delay, personal injury, death or expenses including fines and penalties, and all reasonable attorneys' fees, expenses and costs caused to MSC, the vessel, any cargo, and other property, whether on board or ashore, arising from the Dangerous Goods cargo and/or from the breach of Clause 15.1, whether or not Defendants were aware of the nature of the Dangerous Goods cargo.

42. By virtue of their breaches of Clauses 11.4, 13, 14.4, 14.6, 15.1 and 15.2 of the Sea Waybill, Defendants are jointly and severally liable to MSC for all damages and losses it incurred, and all of MSC's damages and losses as aforesaid were directly attributable to and caused by the aforesaid breaches of contract by Defendants and/or their agents without any fault of MSC or its agents contributing thereto.

43. As a direct and proximate result of these breaches, MSC has suffered damages in the amount of $1,662,026, representing the USD value of a CAD 2,277,939.99 settlement paid by Plaintiff to a marine terminal for emergency hazmat remediation, storage, and disposal costs necessitated by Defendant's failure to properly pack and declare dangerous cargo, CAD 11,061.99 paid to Harbour Link in response to the same incident, and CAD 23,607.20 paid to surveyors responding to the same incident.

44. As a direct and proximate result of these breaches, MSC has been exposed to claims asserted by Sigma-Aldrich Co. LLC and Sigma-Aldrich, Inc. d/b/a Millipore-Sigma in the Supreme Court of British Columbia.

**FOURTH CAUSE OF ACTION (Demurrage)**

45. MSC repeats and realleges each prior paragraph as if set forth fully herein.

46. Pursuant to the terms of the Sea Waybill and the MSC tariff contractually incorporated therein, the Merchant is liable for all demurrage, detention, and storage charges incurred in connection with the subject containers and cargo.

47. As a direct and proximate result of the leakage, emergency safety remediation, and delayed disposal of the Dangerous Goods, containers TEMU4064950 and CAIU8135175 accrued outstanding demurrage charges in the amount of $145,935.00.

48. Defendants' failure to pay the outstanding demurrage charges constitutes a material breach of the contract of carriage.

49. As a direct and proximate result of Defendants' breach, MSC has suffered damages in the amount of $145,935.00, which remains due, owing, and unpaid despite due demand.

**FIFTH CAUSE OF ACTION (Declaratory Judgment)**

50. MSC repeats and realleges each prior paragraph as if set forth fully herein.

51. This claim is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to declare the rights and legal relations of the parties.

52. An actual, justiciable, and present controversy exists between MSC and Defendants regarding Defendants' duty to defend, indemnify, and hold MSC harmless from and against the BC Action under the terms and conditions of the Sea Waybill.

53. Pursuant to the Sea Waybill, including but not limited to Clauses 11.4, 13, 14.4, 14.6, 15.1, and 15.2 thereof, Defendants are contractually obligated to indemnify, hold harmless, and defend MSC against any and all liability, losses, damages, and expenses (including reasonable attorneys' fees and costs) arising out of or resulting from the Dangerous Goods cargo, including claims asserted by third parties.

54. MSC is currently incurring, and will continue to incur, substantial legal fees, costs, disbursements, and potential liability in defending the BC Action, all of which are directly attributable to the leakage of the Dangerous Goods cargo and Defendants' breaches of the Sea Waybill.

55. Accordingly, MSC is entitled to a declaratory judgment declaring that Defendants are contractually obligated to defend, indemnify, and hold MSC harmless from and against any and all liability, damages, losses, settlements, judgments, and reasonable legal fees and costs incurred or to be incurred by MSC in connection with the BC Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MSC Mediterranean Shipping Company S.A. prays for judgment against Defendants Schenker, Inc. and The Great Ocean Line PTE. Ltd., jointly and severally, as follows:

a. For damages in the principal amount of CAD 2,312,609.18 (or the USD equivalent calculated as of the date of breach/payment), representing the emergency remediation and disposal settlement, and the Harbour Link and surveying costs incurred by MSC;

b. For damages in the amount of $145,935.00, representing outstanding container demurrage charges;

c. For a Declaratory Judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants are contractually obligated to defend, indemnify, and hold Plaintiff harmless from and against any and all liability, damages, losses, settlements, judgments, and legal fees and costs incurred or to be incurred in connection with the pending civil claim in the Supreme Court of British Columbia;

d. For an award of Plaintiff's reasonable attorneys' fees, expenses, and costs pursuant to the terms and conditions of the Sea Waybill;

e. For pre-judgment and post-judgment interest at the maximum legal rate; and

f. For such other and further relief as the Court may deem just and proper.

Dated: October 14, 2026
New York, NY

MONTGOMERY McCRACKEN
WALKER & RHOADS, LLP
Attorneys for Plaintiff
MSC MEDITERRANEAN SHIPPING
COMPANY S.A.

By: ______________________________

Jon Werner
437 Madison Avenue
24th Floor
New York, NY 10022
(212) 867-9500
jwerner@mmwr.com